**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X   **JURY TRIAL DEMANDED**
LORENZO ROBERT SAVAGE III,

               Plaintiff,                        Case No.

    -against-

ASSOCIATED NEWSPAPERS LTD. and
MAIL MEDIA, INC.,                                  **COMPLAINT**

              Defendants.
------------------------------------------------------------------------X

Plaintiff **LORENZO ROBERT SAVAGE III** ("Plaintiff" or "Mr. Savage"), by his attorney, Law Office of Mark E. Goidell, as and for his Complaint against Defendants ASSOCIATED NEWSPAPERS LTD. and MAIL MEDIA, INC. states and alleges the following:

**PRELIMINARY STATEMENT**

1. Defendants falsely alleged that Plaintiff, a long-time and decorated special agent employed by the United States Secret Service ("USSS"), engaged in significant misconduct in the performance of his official duties by surreptitiously providing assistance to Hunter Biden, the son of President Joseph R. Biden, Jr., and covering up the alleged misbehavior of Hunter Biden relating to drug abuse and patronizing prostitutes. In support of these utterly false allegations, Defendants falsely reported that Plaintiff sent text messages to Hunter Biden, knowing or recklessly disregarding the obvious indicators that the text messages attributed to Plaintiff were fabricated.

2. Plaintiff is a dedicated husband and father of three. He is a 25-year veteran of the USSS. Beginning in 2015, Plaintiff served in the Senior Executive Service as the Special Agent in Charge of the USSS Los Angeles Field Office until November 2017. In that capacity, Plaintiff oversaw all Secret Service protective, investigative, and protective intelligence operations in which that office of the USSS was engaged.

3. Without regard to Plaintiff's well-being and well-earned reputation, Defendants published a false and malicious story alleging that fabricated text messages they attributed to Plaintiff were sent to Hunter Biden by Plaintiff, and then falsely reported that the text messages were found on the laptop belonging to Hunter Biden. Defendants published allegations regarding the fabricated text messages they attributed to Plaintiff, together with a falsified connection to the son of President Biden, to sensationalize their publications and enhance revenue from clicks and advertising.

4. For almost three years, these Defendants and other media outlets with an apparent agenda have published false allegations about the Plaintiff. This action is brought to hold these Defendants accountable for their malicious, fabricated, and unscrupulous attacks on Plaintiff. Defendants' continued defamation must come to an end.

**PARTIES**

5. At all material times, Plaintiff was and is a resident of the State of California.

6. Upon information and belief, Defendant ASSOCIATED NEWSPAPERS LTD. ("ANL") is a British multinational media company registered in England and Wales and headquartered in London, U.K., which owns and operates, among other publications, MailOnline (www.dailymail.com). ANL boasts MailOnline, branded as the "Daily Mail," is the world's most read English-language news site, and is the fifth most popular news website in the United States. Upon information and belief, ANL is a wholly owned subsidiary of Daily Mail and General Trust plc ("DMGT"), a company listed on the London Stock Exchange.

7. Upon information and belief, Defendant MAIL MEDIA, INC. ("Mail Media") is also a wholly owned subsidiary of DMGT that manages ANL's U.S.-based operations for MailOnline. Mail Media is incorporated and exists under the laws of the State of Delaware, is authorized to conduct business in the State of New York, and maintains its headquarters in New York, New York.

Mail Media boasts that on behalf of ANL, it employs hundreds of reports and editors, as well as ad-tech, operations, and ad-sales teams, in the United States.

8. Defendants are collectively referred to herein as the "Daily Mail."

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district, and/or because a substantial part of the events, acts and/or omissions giving rise to this action occurred in this District, and/or because both Defendants have contacts within this judicial district that would be sufficient to subject it to personal jurisdiction if this district were a separate state.

## FACTS

*Facts Relating To Plaintiff*

11. Plaintiff Robert Savage is a dedicated husband and father of three who has dedicated his life to serving and protecting the lives of others.

12. Mr. Savage is a 25-year veteran of the USSS. He began his Secret Service career in 1993 as a special agent assigned to the Washington, D.C. Field Office and steadily rose through the ranks. He had a distinguished career, officially retiring in April of 2018.

13. Mr. Savage received numerous awards during his exemplary tenure with the USSS. For example, Mr. Savage received: a Presidential Certificate of Appreciation in 2003 from President George W. Bush; the U.S. Department of Homeland Security Secretary's Award for excellence as the National Special Security Event Coordinator for the 2011 Asia-Pacific Economic Cooperation Leaders' Meeting comprised of 21 world leaders; the United States Secret Service Exemplary Performance Award 2004-2016; and a Congressional Certificate of Special

Recognition by U.S. Representative Karen Bass in 2015.

14. Mr. Savage's steady rise through USSS ranks saw his appointment to the title of Assistant to the Special Agent in Charge of the Presidential Protective Division in 2004, Assistant Special Agent in Charge of the Las Vegas Field Office in 2007, and in 2015, Mr. Savage was appointed to the Senior Executive Service as the Special Agent in Charge of the Los Angeles Field Office.

15. From 2015 until November 2017, when Mr. Savage took a leave of absence in advance of his retirement to pursue an employment opportunity, Mr. Savage led the USSS Los Angeles Field Office− the third largest of the Secret Service's 42 field offices. In that role, he successfully oversaw all Secret Service protective, investigative, and protective intelligence operations conducted by that office, including three resident offices located in Riverside, Santa Ana, and Ventura, California.

16. During his leave of absence and since his retirement from the USSS, Plaintiff transitioned to the private sector and became the chief executive officer of a major private security company.

17. Mr. Savage left his job as chief executive officer in 2022 and went on to found his own private security company, known as Savage III, Inc. ("Savage III").

*False Reports Relating To Plaintiff*

18. In or about October 2020, articles began circulating in the media about a laptop purportedly belonging to Hunter Biden that was left at a computer repair shop in Delaware. Emails, photographs, and other content and files allegedly found on that laptop landed in the hands of national and international media outlets.

19. The electronic content found on the laptop purportedly included damning evidence of illegal activities engaged in by Hunter Biden.

20.     Beginning in October 2020, various publications began reporting about the recovery of the laptop and the information purportedly found on the device, including but not limited to a treasure trove of emails and photographs concerning Hunter Biden's personal and professional life.

21.     Some articles falsely alleged that text messages attributed to Plaintiff were sent to Hunter Biden in May 2018, falsely accusing Plaintiff of intervening in extracting Hunter Biden from a compromising encounter with a prostitute.

22.     Many articles published what purported to be depictions of the text messages, which included a photographic avatar of Plaintiff.

23.     On June 4, 2021, the Daily Mail published a story depicting the bogus texts, reporting that they were between Hunter Biden and an unnamed Secret Service agent with 25 years of experience from the Los Angeles field office who was providing unauthorized protection to Hunter Biden, and who had since retired from the Secret Service and was working as the chief executive officer of a private security firm.

24.     Media outlets, including the Daily Mail, were notified that the allegations regarding Plaintiff were untrue, and that the text messages attributed to Plaintiff were fabricated.

25.     Plaintiff, through his attorneys, notified Defendants on September 3, 2023 that the allegations Defendants intended to publish, and which were inevitably published on October 2, 2023, were false, that there were no text messages between Plaintiff and Hunter Biden, and that Plaintiff had no relationship with Hunter Biden.

26.     The obvious indicators that the text messages were fabricated and not genuine include, but are not limited to, the following: (i) the text messages are time stamped May 24, 2018, almost a month after Plaintiff retired from the Secret Service; (ii) the telephone number associated with the fabricated texts was a one-use, VOIP number, and is not associated with Plaintiff, his family, or his business; (iii) the profile image/avatar of the purported sender of the messages was

obviously copied and inserted into the fabricated exchange because, among other things, two-person text messages at that time did not depict a sender's profile image/avatar; (iv) the color of the "iMessage" falsely attributed to the sender of the messages to Plaintiff is green, which if genuine and authentic would have been depicted as blue and/or have the words "Text Message" or "Sent as Text Message" adjacent to the green messages; and (v) the content of aspects of the text messages differ in appearance from other versions of the fabricated text messages depicted in other publications.

27. Nevertheless, on October 2, 2023, the Defendants published an article under the headline, "EXCLUSIVE: Hunter Biden was suspected of hiring prostitutes from 'Eastern European sex trafficking ring' during drug binges and falsifying checks to pay the women, Treasury documents reveal." In the article (the October 2, 2023 Article"), posted on the Daily Mail website, Defendants reported that Hunter Biden patronized prostitutes and engaged in suspicious financial transactions that appeared to be related to the hiring of prostitutes. The October 2, 2023 Article reported that Hunter Biden engaged in "a hooker and drug-fueled binge at a Los Angeles hotel in May 2018." The Daily Mail then recycled the false accusations against Plaintiff:

> His binge only ended on May 24, 2018 when then-recently retired LA Secret Service chief Robert Savage texted him threatening to break into the room, telling him that 'DC is calling me every 10' and that he was working on 'Celtic's account' – the Secret Service codename for Joe Biden when he was Vice President.

28. Defendants thereby falsely alleged that Plaintiff was connected with the Hunter Biden laptop and misused his position and influence to protect Hunter Biden, and attributed fabricated text messages to Plaintiff.

29. Defendants purposefully published and posted the October 2, 2023 Article, which linked Plaintiff to the text messages purportedly found on Hunter Biden's laptop, although they knew or recklessly disregarded that the texts were fictitious and fabricated, that Plaintiff had no connection to Hunter Biden, and that the conduct Defendants attribute to Plaintiff did not occur.

## **CLAIM FOR RELIEF**

### **(Defamation)**

30. Plaintiff repeats, realleges, and incorporates by reference all allegations contained in the preceding paragraphs above as if fully set forth herein.

31. Defendants published or caused to be published the false and defamatory statements set forth above in the October 2, 2023 Article.

32. In truth and in fact, Plaintiff did not send or receive any text messages to or from Hunter Biden.

33. In truth and in fact, the text messages attributed to Plaintiff were fabricated and did not appear in nor were they retrieved from the laptop of Hunter Biden.

34. In truth and in fact, Plaintiff had no connection to Hunter Biden.

35. In truth and in fact, Plaintiff did not appear at the hotel where Hunter Biden was located, did not assist Hunter Biden, and did not engage in any conduct to cover up any misconduct engaged in by Hunter Biden.

36. On their face, and/or in the exercise of reasonable diligence, it should have been readily apparent that the text messages published by Defendants were not genuine and were fabricated.

37. Although the Daily Mail was aware in 2021 that the text messages attributed to Plaintiff were fabricated, and that its accusations that Plaintiff provided unauthorized and improper protection to Hunter Biden in May 2018, Defendants have amplified and reinvigorated coverage of the false allegations relating to Plaintiff in the October 2, 2023 Article.

38. The October 2, 2023 Article was published with knowing falsity, or were published with reckless disregard for the truth, or the Defendants should have known in the exercise of

reasonable diligence that the allegations relating to Plaintiff were false and that the text messages attributed to Plaintiff were fabricated.

39. The October 2, 2023 Article constitutes defamation per se because they tend to injure Mr. Savage in his trade, business, or profession and directly accuse Mr. Savage of abusing his position, engaging in illegal misconduct, covering up the purported illicit activities of Hunter Biden, unfitness to perform the duties and responsibilities of his profession, and the absence of integrity in the discharge of his duties.

40. The October 2, 2023 Article have exposed Mr. Savage to hatred, contempt, ridicule, disgrace, and loss of business opportunities.

41. The publication of the October 2, 2023 Article have caused significant damage to Plaintiff's reputation, humiliation, embarrassment, mental suffering, shame, emotional distress, and threats to his life, for which Plaintiff is entitled to an award of damages well in excess of $75,000.

42. Additionally, Plaintiff has suffered substantial monetary damages because his business, Savage III, has been deprived of security contracts and business opportunities as a direct and proximate cause of Defendants' publications.

43. Defendants published the October 2, 2023 Article knowing that they would sensationalize and enliven news coverage of Hunter Biden, creating more controversy and generating additional revenue and readership.

44. Defendants engaged in knowing, intentional, willful, wanton, and malicious misconduct with the intent of harming Mr. Savage or in blatant disregard of the substantial likelihood of causing harm to Mr. Savage, thereby entitling Mr. Savage to an award of punitive damages in addition to compensatory damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

 (a) Awarding Plaintiff compensatory, special, and punitive damages in an amount to be determined at trial;

 (b) Awarding Plaintiff prejudgment interest;

 (c) Awarding Plaintiff the costs of this action, together with his reasonable attorney's fees, expert fees, and the expenses and disbursements of this litigation; and

 (d) Awarding such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a jury trial.

Dated: Garden City, New York
   April 29, 2024

                **LAW OFFICE OF MARK E. GOIDELL**

            By: /s Mark E. Goidell
               Mark E. Goidell, Esq.
               *Attorney for Plaintiff*
               666 Old Country Road, Suite 700
               Garden City, New York 11530
               Tel. (516) 683-0001
               mark@goidell.com