UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
LORENZO ROBERT SAVAGE III,                :
                                            Plaintiff,    :   1:24-cv-03280-NRB
                                                             :   **ORAL ARGUMENT REQUESTED**
                         - against -      :

ASSOCIATED NEWSPAPERS LTD., and    :
MAIL MEDIA, INC.                                          :
                                               Defendants.    :
------------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION BY
DEFENDANTS ASSOCIATED NEWSPAPERS LTD. AND MAIL MEDIA INC.
<u>TO DISMISS PLAINTIFF'S COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 3

    I.    THE CHALLENGED STATEMENT CANNOT REASONABLY BE INTERPRETED AS CONVEYING ANYTHING DEFAMATORY ABOUT SAVAGE ............................................................................................................ 3

        A.    The Article Does Not *Explicitly* Defame Savage. ...................................... 3

        B.    The Defamatory Meanings Alleged by Plaintiff Are Inherently Unreasonable ............................................................................................ 4

        C.    The Article's Context Also Makes Clear That Plaintiff's Alleged Defamatory Meanings Are Unreasonable .................................................. 6

    II.    THE COURT SHOULD NOT TAKE JUDICIAL NOTICE OF REPORTS THAT *PREDATE* THE CHALLENGED ARTICLE ............................................ 8

    III.    PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED ................................................................................................................ 10

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bobulinski v. Tarlov*,
  No. 24-CV-2349 (JPO), 2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) ...................................8

*Brimelow v. N.Y. Times Co.*,
  No. 20 Civ. 222 (KPF), 2020 WL 7405261 (S.D.N.Y. Dec. 16, 2020), *aff'd*, No. 21-66-cv,
  2021 WL 4901969 (2d Cir. Oct. 21, 2021), *cert denied*, 149 S. Ct. 1210 (2022) ......................1

*Celle v. Filipino Reporter Enters. Inc.*,
  209 F.3d 163 (2d Cir. 2000)..........................................................................................6, 8

*Dfinity Found. v. N.Y. Times Co.*,
  No. 23-7838-cv, 2024 WL 3565762 (2d Cir. July 29, 2024)....................................................10

*Goldfarb v. Channel One Russia*,
  663 F. Supp. 3d 280 (S.D.N.Y. 2023)......................................................................................6

*Hallett v. Stuart Dean Co.*,
  517 F. Supp. 3d 260 (S.D.N.Y. 2021)......................................................................................6

*Joyce v. Thompson Wigdor & Gilly LLP*,
  No. 06 Civ. 15315(RLC)(GWG), 2008 WL 2329227 (S.D.N.Y. June 3, 2008) ......................3

*Karedes v. Ackerley Grp., Inc.*,
  423 F. 3d 107 (2d Cir. 2005)....................................................................................................6

*Lindberg v. Dow Jones & Co.*,
  No. 20-CV-8231 (LAK), 2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021).................................7

*LoanStreet, Inc. v. Troia*,
  No. 21 Civ. 6166 (NRB), 2023 WL 5836237 (S.D.N.Y. Sept. 8, 2023) (Buchwald, J.)...........6

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
  85 F. Supp. 2d 282 (S.D.N.Y. 2000) (Buchwald, J.), *aff'd*, 2 F. App'x 109 (2d Cir. 2001) ...10

*Satanic Temple, Inc. v. Newsweek Mag., Inc.*,
  661 F. Supp. 3d 159 (S.D.N.Y. 2023)......................................................................................7

*Seljak v. Pervine Foods, LLC*,
  No. 21 Civ. 9561 (NRB), 2023 WL 2354976 (S.D.N.Y. Mar. 3, 2023) (Buchwald, J.) .........11

*Van Buskirk v. N.Y. Times Co.*,
  325 F.3d 87 (2d Cir. 2003)...................................................................................................4, 6

*Yantha v. Omni Childhood Ctr., Inc.*,
  2013 WL 5327516, No. 13-CV-1948 (ARR)(JMA) (E.D.N.Y. Sept. 20, 2013) ....................... 8

**State Cases**

*Allen v. CH Energy Grp., Inc.*,
  58 A.D.3d 1102 (3d Dep't 2009) ........................................................................................... 3

*Armstrong v. Simon & Schuster*,
  85 N.Y.2d 373 (1995) ............................................................................................................ 6

*Aronson v. Wiersma*,
  65 N.Y.2d 592 (1985) .......................................................................................................... 10

*Chiavarelli v. Williams*,
  256 A.D.2d 111 (1st Dep't 1998) ........................................................................................... 3

*Davis v. Brown*,
  211 A.D.3d 524 (1st Dep't 2022) ........................................................................................... 6

*Gambuzza v. Time, Inc.*,
  18 A.D.2d 351 (1st Dep't 1963) ............................................................................................. 4

*Leser v. Penido*,
  62 A.D.3d 510 (1st Dep't 2009) ............................................................................................. 8

*Lunney v. Prodigy Serv. Co.*,
  94 N.Y.2d 242 (1999) ............................................................................................................ 8

*Rall v. Hellman*,
  284 A.D.2d 113 (1st Dep't 2001) ........................................................................................... 7

*Scott v. Cooper*,
  215 A.D.2d 368 (2d Dep't 1995) ............................................................................................ 3

*Thoubboron v. Convery*,
  306 A.D.2d 521 (2d Dep't 2003) ............................................................................................ 3

*Tracy v. Newsday, Inc.*,
  5 N.Y.2d 134 (1959) ......................................................................................................... 4, 8

**Rules**

C.P.L.R. § 215 .......................................................................................................................... 1, 7

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 1

Defendants Associated Newspapers Ltd. and Mail Media Inc. ("Defendants") respectfully submit this reply memorandum in further support of their motion to dismiss Plaintiff Lorenzo Robert Savage III's Complaint ("Compl.") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This case is about a single sentence that no reasonable person could view as defamatory. Plaintiff's Opposition to Defendants' motion to dismiss effectively abandons the central assertion of his Complaint: that the Challenged Statement "***directly***" accuses him of misconduct. Compl. ¶ 39 (emphasis added). He also concedes that he cannot plead claims for defamation by implication or libel per quod. Opp. at 14, 16.

Plaintiff now claims that by identifying him as the person who "ended" Hunter Biden's "hooker and drug-fueled binge," Defendants somehow accused him of being a "partisan," "rogue," "vigilante," who engaged in a "cover-up," and "abused his position." Opp. at 1, 17. No reasonable reader would construe the Article or the Challenged Statement in this bizarre manner.

*First*, the *only* statement at issue here is the Article's single sentence referencing Savage. That sentence is not reasonably susceptible to any defamatory meaning, whether considered on its own or in the larger context of the Article (which primarily discusses Hunter Biden's alleged banking transactions). To support his new, implausible construction, Savage invites the Court to look beyond the Article (and beyond the allegations in his Complaint) to incorporate a news report Defendants published in *2021* which is hyperlinked to the Article. But Savage's attempt to expand his claim to Defendants' earlier reporting plainly is time-barred.[1] Moreover,

---

[1] The applicable statute of limitations is one year, C.P.L.R. § 215; hyperlinking to an earlier publication is not considered a "republication" and, consequently, does not restart the limitations period. *See Brimelow v. N.Y. Times Co.*, No. 20 Civ. 222 (KPF), 2020 WL 7405261, at *7 (S.D.N.Y. Dec. 16, 2020) ("[c]ourts have concluded that merely hyperlinking to an existing

1

Defendants' 2021 article does not defame Savage. Savage claims that the 2021 report included a screenshot of "fabricated" text messages that allegedly were exchanged between him and Hunter Biden. Opp. at 15. But even assuming Savage could prove those text messages were fabricated, it is irrelevant because he cannot plausibly allege they contain anything defamatory about him.

*Second*, Savage asks the Court to take judicial notice of two public reports, ostensibly to show that the Article is susceptible to defamatory meaning. But because both reports significantly *predate* the Article, they cannot possibly suggest anything about how the *later-published* Article was interpreted.

Putting that temporal impediment aside, neither report remotely supports Savage's allegations. The first report is a Fox News article quoting Congressman James Comer's demand for an investigation into the Secret Service's relationship with Hunter Biden. Goidell Decl. Ex. A. But that report *never mentions Savage*, and the facts it references are not in the Article. The second report is about Hunter's laptop, but it also does not accuse Savage of misconduct. The Court should decline to take judicial notice of these documents because they are entirely irrelevant to Defendants' motion.

*Finally*, Savage's request for leave to amend should be denied. Amendment would be futile, and Savage *declined* to amend when given an opportunity to do so by this Court during the pre-motion phase. He should not be allowed another bite at the apple now. Defendants' motion should be granted without leave to amend.

---

publication does not duplicate the content of that publication and give rise to liability."), *aff'd*, No. 21-66-cv, 2021 WL 4901969 (2d Cir. Oct. 21, 2021), *cert denied*, 149 S. Ct. 1210 (2022).

**ARGUMENT**

**I.   THE CHALLENGED STATEMENT CANNOT REASONABLY BE INTERPRETED AS CONVEYING ANYTHING DEFAMATORY ABOUT SAVAGE**

   **A.   The Article Does Not *Explicitly* Defame Savage.**

Plaintiff's Complaint alleges that the Challenged Statement "***directly*** accuse[s] Mr. Savage of abusing his position, engaging in illegal misconduct, covering up the purported illicit activities of Hunter Biden, unfitness to perform the duties and responsibilities of his profession, and the absence of integrity in the discharge of his duties." Compl. ¶ 39 (emphasis added). But as Defendants' Motion points out, neither the Challenged Statement nor anything in the Article says *any* of these things. *See* Mot. at 9-10. Savage's Opposition does not identify any such explicit statements; instead, he simply cites cases where courts found clear accusations of misconduct to be defamatory per se. *See* Opp. at 13 (citing cases). His reliance on these cases simply highlights the weakness of his own claim: his cited cases involved *explicit* accusations of misconduct,[2] whereas it is undisputed that Defendants' Article does not include *any* explicit accusations of misconduct by Savage.

---

[2] *See* Opp. at 13 (citing *Allen v. CH Energy Grp., Inc.*, 58 A.D.3d 1102, 1102-03 (3d Dep't 2009) (false statement that plaintiff "defecated on the sidewalk" was defamatory per se); *Thoubboron v. Convery*, 306 A.D.2d 521, 522 (2d Dep't 2003) (press release accusing former sheriff of using department's aircraft to take personal trips was defamatory per se); *Scott v. Cooper*, 215 A.D.2d 368, 368-69 (2d Dep't 1995) (accusations that chief of police engaged in, *inter alia*, "misconduct regarding his official duties" and "coverups of criminal activities" "tend[ed] to disparage [plaintiff] in his profession"); *Joyce v. Thompson Wigdor & Gilly LLP*, No. 06 Civ. 15315(RLC)(GWG), 2008 WL 2329227, at *12 (S.D.N.Y. June 3, 2008) (report and recommendation) (false accusation that plaintiff lied about her health to avoid termination imputes dishonesty, which was incompatible with her job requirements); *Chiavarelli v. Williams*, 256 A.D.2d 111, 113 (1st Dep't 1998) (plaintiff pleaded defamation per se where defendant wrote letter claiming that plaintiff gave him a negative performance review "for defendant's failure to respond to plaintiff's sexual advances")).

3

### B.     The Defamatory Meanings Alleged by Plaintiff Are Inherently Unreasonable.

Savage also fails to identify any *implied* defamatory meaning in the Article. He concedes that he cannot assert a claim for defamation by implication, arguing that his claim should be construed instead as one for "defamatory connotations." Opp. at 14. But there is no different pleading standard applicable to purportedly defamatory "connotations"; for any defamation claim, the plaintiff must plausibly plead that the statement at issue is "reasonably susceptible to the defamatory meaning imputed to it." *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 90 (2d Cir. 2003) (citation omitted). None of Savage's allegations meet this threshold standard.

*First*, Savage alleges that the Article describes him as "surreptitiously extricat[ing] Hunter … from a night of drug use while patronizing a prostitute," Opp. at 1, and "unethically attempt[ing] to cover up [Hunter's] personal affairs," *id.* at 10. But Savage fails to identify any language in the Article that supposedly conveys that meaning. To the contrary, the Article says Savage "threaten[ed] to break into the room," and credits Savage with "ending" Hunter's unlawful activities. Balin Decl. Ex. A. No reasonable reader could understand those words to mean that Savage was enabling or facilitating Hunter's misdeeds – quite the contrary. Even at the pleading stage, New York courts consistently have rejected allegations like Plaintiff's here, finding that they "do violence to reason and common sense" *Gambuzza v. Time, Inc.*, 18 A.D.2d 351, 355-56 (1st Dep't 1963) (granting pre-answer motion to dismiss). *See also Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 136 (1959) (alleged "innuendo may not enlarge upon the meaning of words so as to covey a meaning that is not expressed").

*Second*, Savage contends that the Article portrays him as a "rogue vigilante." Opp. at 1. But, again, the Article does no such thing; it states that Savage was following orders from officials in "DC" and was "working" on Joe Biden's account. Balin Decl. Ex. A. That is the opposite of a "rogue vigilante" on an "unauthorized" mission. *Id.* If anything, the fact that

4

Savage appeared to be called back into service to assist with a delicate assignment would indicate that he was viewed as trustworthy and competent—reputational qualities that presumably would inure to his benefit in the corporate security industry.

*Third*, Savage alleges that the Article accuses him of "abusing his position." Compl. ¶ 39. But the Article makes clear that Savage was "retired" at the time of the incident described, so he had no "position" to "abuse." Balin Decl. Ex. A. Savage's new assertion, that the Article implied that he "abused his authority as a retired Secret Service agent" (Opp. at 10), is nonsensical. Nothing in the Article suggests that Savage sought to enrich himself or otherwise act for his own benefit. Savage's fealty to the protective mission of his former agency could not reasonably be construed as "abuse."

*Fourth*, Savage adds a new allegation that the Article paints him as a "political partisan." Opp. at 1. But the Secret Service protects senior government officials *regardless* of party affiliation. A statement that Savage protected Joe Biden and his family does not imply that he is a "partisan" Democrat any more than an allegation that he protected President Trump would suggest that he is a "partisan" Republican. Nor can Savage plausibly suggest that his professional reputation was harmed by being associated with the Biden family; his *own business website* prominently features a photograph of him shaking hands *with Joe Biden*.[3]  *See* Mot. at 3 n.3 (courts can take judicial notice of a party's website).

Defendants' opening brief cites numerous cases in which New York courts have found that similarly unreasonable allegations about defamatory meaning were dismissed at the pleading

---

[3] *See* https://savageiii.com/lorenzo-robert-savage/ (last visited Feb. 17, 2025). Any suggestion that Savage lost business because the Article allegedly depicted him as a "partisan" Democrat also is belied by his own sworn declaration, which lists the contracts he purportedly "lost" due to the Article: the only political entities identified are the campaigns of two former *Democratic* U.S. senators, Sherrod Brown and John Tester. Plaintiff's Decl. ¶ 6.

5

stage. *See* Mot. at 12-13 (collecting cases). Savage simply ignores *all* of these cases, relying instead on inapposite decisions involving clear, direct defamatory meanings.[4] The overwhelming authority makes clear that the Article cannot be reasonably read to convey the strained meanings alleged by Savage.

        **C.**    **The Article's Context Also Makes Clear That Plaintiff's Alleged Defamatory Meanings Are Unreasonable.**

When read in context, as the law requires, the Article further demonstrates that Savage's allegations of defamatory meaning are unreasonable. *See Van Buskirk*, 325 F.3d at 90 ("[T]he court is not to read the allegedly libelous statements alone, but must read them 'as the average reader would against the whole apparent scope and intent of the writing.'") (citing *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000)). Here, the Article as a whole does not support Savage's unreasonable construction.

The Article reports on U.S. Treasury documents reflecting a bank investigation into

---

[4] *See* Opp. at 10 (citing *Karedes v. Ackerley Grp., Inc.*, 423 F. 3d 107, 114 (2d Cir. 2005) (article identifying manager of public golf course as the individual who caused town to pay invoices that should have been paid by private entity imputed professional misconduct); *LoanStreet, Inc. v. Troia*, No. 21 Civ. 6166 (NRB), 2023 WL 5836237, at *11 (S.D.N.Y. Sept. 8, 2023) (Buchwald, J.) (statements that company's CEO "just pocketed the options he promised me," is "a rich con man," and that CEO "defrauded" a former employee were reasonably susceptible to defamatory meaning)); Opp. at 14 (citing *Goldfarb v. Channel One Russia*, 663 F. Supp. 3d 280, 298 (S.D.N.Y. 2023) (news report could reasonably be understood as accusing plaintiff of killing his wife by stating that plaintiff had murdered someone else; his wife knew about the prior murder; and his wife was a "very young" woman, who died suddenly under mysterious circumstances); *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 380-81 (1995) (statement that lawyer pressured his client to sign a false statement for benefit of another client reasonably susceptible to defamatory meaning); *Davis v. Brown*, 211 A.D.3d 524, 524 (1st Dep't 2022) (letter from college president blaming school leaders for failing to recognize that school fashion show was "inappropriate" and announcing that the plaintiff, a dean, was being suspended, was reasonably susceptible to defamatory meaning)). *Compare Hallett v. Stuart Dean Co.*, 517 F. Supp. 3d 260, 282 (S.D.N.Y. 2021) (corporate board chairman's letter stating that CEO "will step down from his position effective immediately" not reasonably susceptible to implication that he was terminated for misconduct).

6

suspicious payments allegedly made by Hunter Biden. Balin Decl. Ex. A. Savage is mentioned only in the final paragraphs of the Article as the person who "ended" Hunter's binge. *Id.* Read in context, no reasonable reader could construe this passing mention of Savage as a direct (or indirect) accusation of misconduct.

Savage also does not (and cannot) suggest that Defendants *intended* the attenuated defamatory meanings that he ascribes to the Article. *See, e.g.*, *Satanic Temple, Inc. v. Newsweek Mag., Inc.*, 661 F. Supp. 3d 159, 174 (S.D.N.Y. 2023) (dismissing defamation claim arising from allegedly false statement, in part because it was a "leap" to suggest that the alleged defamatory implication was "intended and endorsed by the author of the Article"); Mot. at 12-13.

Unable to counter these points, Savage instead tries to broaden his claim to include a news report published by Defendants in *2021*, which was hyperlinked to the Article. Opp. at 10-11. That sleight-of-hand fails for two independent reasons. *First*, the earlier reporting plainly is time-barred. *See* C.P.L.R. § 215 (statute of limitations for defamation is one year). It is well settled that a hyperlink to an earlier, time-barred statement is not considered to be a republication of that earlier statement. *See Lindberg v. Dow Jones & Co.*, No. 20-CV-8231 (LAK), 2021 WL 3605621, at *5 (S.D.N.Y. Aug. 11, 2021) (collecting cases) (granting motion to dismiss). Accordingly, no claim can arise from the hyperlinked 2021 report.

*Second*, the time-barred 2021 reporting does not help Plaintiff's claim. Savage asserts it includes allegedly "fabricated" text messages, but for all of the same reasons discussed above, he cannot (and does not) allege that they contain any defamatory meaning.[5] And again, viewed in

---

[5] Savage cites several cases where courts found that falsely attributed statements were susceptible to defamatory meaning. *See* Opp. at 15 (collecting cases). But in each of those cases, it was not enough that statements were falsely attributed; in each case, the specific *content* of the falsely attributed comments caused reputational harm. *See id.* (citing *Rall v. Hellman*, 284 A.D.2d 113, 113 (1st Dep't 2001) (fabricated email attributed to the plaintiff "made plaintiff

7

context, it is apparent that the Article references the earlier reporting in order to provide additional detail about Hunter's lascivious behavior, not to disparage Savage. The hyperlinked words appear in the Article several paragraphs before Savage is even mentioned. *See* Balin Decl. Ex. A ("[t]he sex worker is likely Gulnora Djamalitdinova, to whom Hunter wired $25,000 during a hooker and drug-fueled binge at a Los Angeles hotel in May 2018, [DailyMail.com has previously reported](#).").

In short, the defamatory meanings alleged by Savage must be rejected because they add "an entirely new and independent thought that finds no support in the article." *Tracy*, 5 N.Y.2d at 137 (granting motion to dismiss).

## II. THE COURT SHOULD NOT TAKE JUDICIAL NOTICE OF REPORTS THAT *PREDATE* THE CHALLENGED ARTICLE

Savage also asks the Court to take judicial notice of two public reports, ostensibly to show how the Article supposedly was understood. Opp. at 3, 6 (citing Goidell Decl. Exs. A, B). But both of these publications ***significantly predate*** the Article, and neither contains any allegation of misconduct against Savage.[6] The Court should decline to take judicial notice of

---

appear [] rude, petty, [and] self-absorbed"); *Lunney v. Prodigy Serv. Co.*, 94 N.Y.2d 242, 248 (1999) (defendant transmitted vulgar emails to a third person that falsely appeared to have been sent by plaintiff); *Leser v. Penido*, 62 A.D.3d 510, 510 (1st Dep't 2009) (defendant posted pornographic photographs, falsely attributed to plaintiff, on various websites); *Yantha v. Omni Childhood Ctr., Inc.*, 2013 WL 5327516, at *5, No. 13-CV-1948 (ARR)(JMA) (E.D.N.Y. Sept. 20, 2013) (defendants submitted fraudulent insurance claims, falsely submitted in plaintiff's name, effectively associating her with a fraudulent conspiracy)). That is not the situation here.

[6] Savage contends that "a person's understanding of the meaning of a publication is appropriately considered." Opp. at 12. That does not mean a particular individual's interpretation is somehow relevant; instead, the court looks at the "average" reader, and "allegedly defamatory statements are to be construed as they would 'by the public to which they are addressed.'" *Bobulinski v. Tarlov*, No. 24-CV-2349 (JPO), 2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) (granting motion to dismiss) (quoting *Celle*, 209 F.3d at 177-78), *appeal docketed*, No. 25-17 (2d Cir. filed Jan. 3, 2025). Moreover, because the reports cited by Savage

8

these publications.

Exhibit A to the Goidell Declaration is a Fox News article quoting statements made by Congressman James Comer, Chair of the House Committee on Oversight and Government Reform on February 13, 2023, nearly eight months *before* the Article was published on October 2, 2023. Opp. at 1 (citing Goidell Decl. Ex. A). The Fox News report quotes Comer as calling for an investigation into the Secret Service and "accusing the agency of taking part in a 'bizarre' ploy to protect Hunter Biden." Goidell Decl. Ex. A. But Comer's comments *do not even mention Savage* or the allegedly fabricated text messages. In fact, the Fox News article states that Comer's comments were made about a completely different issue: "a trove of emails that raise questions about the Secret Service's role in a 2018 incident involving Hunter Biden's handgun." *Id.* And although Comer mentions the Secret Service helping Hunter "when he was in California and getting in all kinds of trouble," his comments reference things that are not in the Article, including that Hunter got "kicked out of a very exclusive hotel," and that the Secret Service tried to "get [Hunter] back to Delaware to his family to protect him." *Id.* Because Comer's comments were based on incidents that were not reported in the Article, it is both incorrect and misleading to suggest that the October 2023 Article was "sufficient to prompt" Comer to call for an investigation into the Secret Service in February 2023. *See* Opp. at 1.

Exhibit B to the Goidell Declaration goes even further afield. It is an excerpt from a report about the Hunter Biden laptop that was published in October 2022, *a full year before Defendants' Article*.[7] Goidell Decl. Ex. B. It includes a screenshot of the alleged text message

---

were published well *before* the Article at issue, they cannot possibly reflect any reasonable reader's understanding of an Article published later in time.

[7] *See* https://marcopolo501c3.substack.com/p/report-on-the-biden-laptop (last visited Feb. 17, 2025)

9

exchange between Savage and Hunter Biden but, like the Article, does not accuse Savage of misconduct.

Because neither of these documents support Savage's implausible allegations of defamatory meaning, they should be disregarded.

### III. PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED

In his pre-motion letter, Savage argued that he had pleaded a claim not mentioned in the Complaint: libel per quod. Dkt. 17 at 3. He now concedes that this alternative argument fails. *See* Opp. at 16-17. Instead, in a last-ditch effort to survive this motion, he seeks leave to amend his complaint so that he can attempt to plead special damages.[8] Opp. at 17. The Court should deny this request.

*First*, amendment would be futile.[9] Savage cannot identify any extrinsic fact that could plausibly transform the Article's laudatory characterization of Savage's actions into a defamatory one. Mot. at 14. No amount of creative pleading can alter this fatal deficiency.

*Second*, Plaintiff expressly *waived* the Court's offer to amend after these very issues were raised during the pre-motion process. *See* Dkt. at 19. As this Court previously has held, "[l]eave to amend is appropriately denied where, as here, the plaintiff has already had an opportunity to replead after specific warnings as to a complaint's deficiencies." *Odyssey Re (London) Ltd. v.*

---

[8] Savage includes assertions about special damages in his supporting declaration, *see* Savage Decl. ¶ 6, but this does not salvage his claim. *See Aronson v. Wiersma*, 65 N.Y.2d 592, 595 (1985) ("Plaintiff has not pleaded special damages in her complaint and her effort to do so in her affidavit in opposition to the motion to dismiss . . . does not suffice.").

[9] A district court need not grant leave to amend when doing so would be futile. *See Dfinity Found. v. N.Y. Times Co.*, No. 23-7838-cv, 2024 WL 3565762, at *3 (2d Cir. July 29, 2024) (affirming dismissal of defamation claim without leave to amend where amendment would be futile).

10

*Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 304 n.27 (S.D.N.Y. 2000) (Buchwald, J.), *aff'd*, 2 F. App'x 109 (2d Cir. 2001). *See also Seljak v. Pervine Foods, LLC*, No. 21 Civ. 9561 (NRB), 2023 WL 2354976, at *16 (S.D.N.Y. Mar. 3, 2023) (Buchwald, J.) (denying leave to amend where, "[n]otwithstanding the benefit of defendant's [pre-motion] letter, plaintiffs did not amend their complaint"). Similarly, leave to amend should be denied here.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed *with prejudice*.


Dated: February 17, 2025
    New York, New York

                                                 DAVIS WRIGHT TREMAINE LLP

                                                 By: */s/ Robert D. Balin*
                                                 Robert D. Balin
                                                 Adam I. Rich
                                                 1251 Avenue of the Americas, 21st Floor
                                                 New York, NY 10020
                                                 Phone:    (212) 489-8230
                                                 Email:     robbalin@dwt.com
                                                                                 adamrich@dwt.com

                                                 Kelli Sager (*pro hac vice*)
                                                 865 S. Figueroa Street, Suite 2400
                                                 Los Angeles, CA 90017
                                                 Phone:    (213) 633-6800
                                                 Email:     kellisager@dwt.com

                                                 *Attorneys for Defendants Associated*
                                                 *Newspapers Ltd. and Mail Media, Inc.*

**Certification Of Word Count**

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing reply memorandum of law complies with the applicable word-count limitations and contains 3,497 words, excluding the caption, table of contents, table of authorities, signature blocks, and this certification.

Dated:  February 17, 2025
           New York, New York

                                                          */s/ Robert D. Balin*
                                                           Robert D. Balin