UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
LORENZO ROBERT SAVAGE III

Plaintiff,

- against -

**MEMORANDUM AND ORDER**

NYP HOLDINGS, INC d.b.a NEW YORK POST, MIRANDA DEVINE, JONATHAN LEVINE,

24 Civ. 03278 (NRB)

Defendants.
--------------------------------------X
LORENZO ROBERT SAVAGE III,

Plaintiff

- Against -

24 Civ. 03280 (NRB)

ASSOCIATED NEWSPAPERS LTD., and MAIL MEDIA, INC.

Defendants.
--------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Lorenzo Robert Savage III ("plaintiff" or "Savage") has moved pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the Judgment entered on September 19, 2025 following the filing of a Memorandum and Order, which granted motions to dismiss the two above-captioned related cases and denied plaintiff's requests for leave to file amended complaints.

A Rule 59(e) motion is evaluated under the following standards. "A court may grant a Rule 59(e) motion only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error

or prevent manifest injustice." Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 142 (2d Cir. 2020) (internal quotation marks omitted). In this Circuit, "the standard for granting a Rule 59(e) motion 'is strict, and . . . [the motion] will generally be denied.'" In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quoting Ursa Minor Ltd. v. Aon Fin. Prods., Inc., 2000 WL 1279783, at *1 (S.D.N.Y. Sep. 8, 2000)). "At bottom, Rule 59(e) is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Yelle v. Mount St. Mary College, 2021 WL 311213, at *2 (S.D.N.Y. Jan. 29, 2021) (internal quotation marks omitted). Ultimately, "[t]he decision whether to grant a motion for reconsideration under . . . Rule 59(e) . . . lies in the sound discretion of the district court." In re Gildan Activewear, Inc. Sec. Litig., 2009 WL 4544287, at *2 (S.D.N.Y. Dec. 4, 2009). "These standards . . . apply in full force to a motion for reconsideration of a denial of leave to replead." Id. (internal quotation marks omitted).[1]

A review of the 26-page September 19, 2025 Memorandum and Order, No. 24-cv-03278, ECF No. 38; No. 24-cv-03280, ECF No. 38

[1] Although plaintiff also "requests that this Court reconsider its September 19 Memorandum and Order," No. 24-cv-03278, ECF No. 44 at 1; No. 24-cv-03280, ECF No. 44 at 1 ("Mot."), and cites to Local Civil Rule 6.3, Mot. at 3, plaintiff did not formally move for reargument or reconsideration, presumably because the time to do so had passed before the Rule 59(e) motion was filed. See S.D.N.Y. Local Civil Rule 6.3 ("[A] notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged.").

("Memorandum and Order" or "M&O"), is necessary to place the current motion in context. At pages 2-7 of the Memorandum and Order, the Court described the alleged defamatory publications at issue. At pages 8-10, the procedural history of the litigation was reviewed. Of specific relevance here, we recounted plaintiff's interaction with the Court before the motions to dismiss were filed. Pursuant to this Court's Individual Practice 2.B, the defendants submitted pre-motion letters with respect to their proposed motions to dismiss to which the plaintiff responded. See No. 24-cv-03278, ECF Nos. 14, 15; No. 24-cv-03280, ECF Nos. 16, 17. We quote a portion of the discussion that followed:

> In response [to defendants' pre-motion letters], plaintiff contended that the publications were per se defamatory, and in the alternative, constituted 'libel by extrinsic fact (libel per quod).' Plaintiff also asserted that '[e]ven if special damages are required . . . plaintiff has adequately set forth the lost business opportunities arising from the' relevant publications.
>
> The Court granted defendants leave to file their motion without the necessity of a pre-motion conference. The Court reminded plaintiff that 'if, consistent with Rule 11, he can assert additional allegations to cure any alleged deficiencies raised by defendants' letter, it would be in the best interest of both the parties and the Court for plaintiff to assert them now, before briefing on the proposed motions' and granted plaintiff leave to file an amended complaint.
>
> Plaintiff chose to not file an amended complaint in either case.

M&O at 10 (citations omitted) (second and third alterations in original).

Next, the legal standards applicable to a motion to dismiss and to a claim for defamation were set out on pages 10-13 of the Memorandum and Order. It is worth noting that no objections have been raised with respect to the Court's recital of applicable legal frameworks.

Then, after setting out the parties' respective positions, the Court engaged with plaintiff's allegations as to why the publications were defamatory. Plaintiff made the same basic assertions then as he does in the current motion. First, plaintiff argued that the publications suggested that he "misused his authority as a retired Secret Service agent to extract Hunter Biden from difficulty." Id. at 15. Second, he "allege[d] that the publications 'directly accuse Mr. Savage of . . . engaging in illegal misconducgt.'" Id. at 16. Third, plaintiff alleged that the publications "directly accuse[d] Mr. Savage of . . . unfitness to perform the duties and responsibilities of his profession" and that he "provided unauthorized protection and services to Hunger Biden." Id. at 17. Finally, plaintiff asserted that the publications accused him of "the absence of integrity," being a "political partisan," and being "a rogue law enforcement officer" . . . who disregarded protocols and lines of command to protect the son of the former Vice President." Id. at 18.

After rejecting the arguments that a defamatory meaning could be found in the text, the Court continued to address plaintiff's secondary argument that the publications could be found defamatory "because of the context in which [they were] published" and found the contextual argument equally unpersuasive specifically addressing plaintiff's three cited examples. Id. at 19-22 (alteration in original).

Finally, the Memorandum and Order addressed plaintiff's request for leave to file an amended complaint to assert a libel per quod claim. Id. at 22-25. That application was denied on several grounds: that (1) plaintiff had already argued the points in his memoranda in opposition to the motions to dismiss; (2) plaintiff had failed to avail himself of the opportunity granted pre-motion to amend; and (3) any amendment would be futile since the analysis of both defamation per quod and defamation per se mandates that "the plain and obvious meaning of the challenged statements cannot be altered or changed by innuendo[,]" which is not present in the extrinsic publications at issue in this case. Id. at 24-25.

Following the filing of the Memorandum and Order, plaintiff changed counsel and the instant motion followed.

**DISCUSSION**

In his effort to meet the Rule 59(e) standard, plaintiff primarily relies on Foman v. Davis, 371 U.S. 178 (1962). In Foman,

the Supreme Court reversed an appellate court's refusal to review a district court's denial of leave to amend where the Circuit's decision was based on technical defects in the plaintiff's notice of appeal. Id. at 181. There, the Supreme Court held that "it [was] too late in the day and entirely contrary to the spirit of [Federal Rule of Civil Procedure 15] for decisions on the merits to be avoided on the basis of such mere technicalities." Id. (emphasis added).

Here, there was no reliance on "mere technicalities" and no disregard of Rule 15(a). In fact, even before the motions to dismiss could be filed, plaintiff was granted leave to amend without the need for any explanation or justification. Moreover, there is ample support in Second Circuit case law to hold a plaintiff to his decision not to avail himself of the opportunity to amend offered before motion practice commences and where, as here, the pre-motion letter placed plaintiff on notice of the defendants' arguments in support of their proposed motions to dismiss. See e.g., Rosner v. Star Gas Partners, L.P., 344 F. App'x 642, 645 (2d Cir. 2009) (no abuse of discretion when the district court denied leave to amend after giving "plaintiffs-appellants the opportunity to amend the Complaint after a pre-motion telephone conference where the defendants described their arguments in favor of dismissal [and] [p]laintiffs-appellants declined to do so"); see also Williams v. Citigroup Inc., 659 F.3d 208, 213 (2d Cir.

2011) ("'When the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion [to grant leave to amend] more exactingly.'") (alteration in original) (quoting State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990)).[2]

Indeed, plaintiff candidly admits what he did not know from defendants' pre-motion letters: namely, the letters "did not provide Plaintiff with any knowledge regarding how the Court would view the complaint." Mot. at 5. However, courts in this district have made clear that plaintiff "is 'not entitled to an advisory opinion from the Court informing [him] of the deficiencies in the complaint and then an opportunity to cure those deficiencies.'" Sussman Sales Co., Inc. v. VWR Int'l, LLC, 2021 WL 6065760, at *8 (S.D.N.Y. Dec. 21, 2021) (quoting Belikoff v. Eaton Vance Corp., 481 F.3d 110, 118 (2d Cir. 2007)).[3]

[2] Plaintiff's cited cases are distinguishable and do not compel a contrary conclusion. See, e.g., Int'l Code Council, Inc. v. UpCodes Inc., 43 F.4th 46, 55 (2d Cir. 2022) (overruling a district court's decision to "sua sponte and without notice convert[] the parties' pre-motion letters into a motion to dismiss and opposition."); Mandala v. NTT Data, Inc., 88 F.4th 353, 362 (2d Cir. 2023) (noting in a case in which there is no indication that pre-motion letters were submitted or that the plaintiff was afforded an opportunity to amend pre-motion that "the failure to seek leave to amend pre-judgment, standing alone, does not constitute undue delay or otherwise justify denying relief from judgment for a plaintiff seeking to file a first amended complaint") (emphasis added).

[3] Apparently, both of plaintiff's lawyers hold the misguided view that they are entitled to know the Court's ruling before amending a complaint even where the purported deficiencies in the complaint are known. See No. 24-cv-03278, ECF No. 31 at 3 n.2; No. 24-cv-03280, ECF No. 31 at 2 n.2 ("[P]laintiff conditionally requests leave to amend the Complaint to allege special damages

Moreover, in this context, plaintiff's motion goes beyond seeking the proverbial two bites at the apple. Rather, it turns a sensible case management tool, which actually favors a plaintiff, into a burdensome and unnecessary expenditure of effort by the Court and counsel. There is simply no authority to support plaintiff's position.

Finally, plaintiff argues that reconsideration is particularly appropriate here because "new counsel has recently substituted into this case and is submitting a more detailed pleading that it believes addresses the Court's concerns[.]" Mot. at 6.[4] However, the fact that plaintiff is represented by new counsel does not change the standards for granting leave to amend, nor the strict standards governing Rule 59(e) motions. See New Falls Corp. v. Soni Holdings, LLC, 2020 WL 9211146, at *7 (E.D.N.Y. Sep. 30, 2020) ("[A] party does not get the proverbial second bite at the apple simply because it obtains new counsel during the course of the litigation."); see also Inst. For Dev. Of Earth Awareness v. People for the Ethical Treatment of Animals, 2009 WL 3255547, at *3 (S.D.N.Y. Oct. 9, 2009) (denying leave to amend

and other limited relevant circumstances, but only if the Court determines that the allegations of the Complaint are insufficient to plausibly allege that the [challenged publication] is reasonably susceptible to a defamatory connotation.").

[4] Notably, plaintiff's new counsel does not assert that he is relying on "new evidence."

despite the plaintiff's argument that prior counsel "may not have understood" an order of the court).

While the above discussion is itself sufficient grounds to reject plaintiff's Rule 59(e) motion, nonetheless we will briefly discuss one additional aspect of plaintiff's request for leave to amend.

It is well-settled that defamation per se cannot be predicated on extrinsic facts. Aronson v. Wiersma, 65 N.Y.2d 592, 594-95 (N.Y. 1985) ("[S]tatements cannot be [defamatory] per se if reference to extrinsic facts is necessary to give them a defamatory import."); Houston v. New York Post Co., Inc., 1997 WL 10034, at *3 n.4 (S.D.N.Y. Jan. 10, 1997) (same). In contrast, the evaluation of a defamation per quod claim may consider extrinsic circumstances. Idema v. Wager, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000), aff'd Idema v. Wager, 29 Fed. App'x 676 (2d Cir. 2002) ("When the common usage of the challenged language can be libelous due to extrinsic circumstances, plaintiff can bring an action for libel per quod.").

The focus of plaintiff's proposed amended complaint is the addition of allegations offering context, i.e., extrinsic facts, to support plaintiff's contention that the statements should be found defamatory. However, in plaintiff's effort to contort the non-defamatory publications into defamatory ones, he fails to consider that, under either test, the Court must consider the

actual audience for the publication. As articulated in established law, the challenged statement in both scenarios must be evaluated "against the understanding of the average reader." Idema, 29 Fed. App'x at 678.

Specifically, "[i]n a claim of defamation per quod, 'no defamatory statement is present on the face of the communication but a defamatory import arises through reference to facts extrinsic to the communication.'" Fairstein v. Netflix, Inc., 553 F. Supp. 3d 48, 63 (S.D.N.Y. 2021) (quoting Ava v. NYP Holdings, Inc., 64 A.D.3d 407, 412 (N.Y. 2009)). While analyzing a claim for defamation per quod, "the Court construes the [allegedly defamatory] words and actions . . . in the context of the series as a whole, and weighs whether they are susceptible to a defamatory interpretation from the perspective of the average viewer." Id. at 64 (emphasis added).

As noted earlier, plaintiff seeks to add extrinsic information that he asserts would turn the statements that the Court found non-defamatory into actionable ones. Plaintiff describes these new allegations with the heading: "Standards of Conduct and Professionalism in the Security Industry, with Particular Focus on Standards of Former USSS Agents." No. 24-cv-03278, ECF No. 45-1 ¶¶ 24-33; No. 24-cv-03280, ECF No. 45-1 ¶¶ 24-33. For example, plaintiff's proposed amended complaint adds the allegations that "Members of the USSS 'must abide by the highest

standards of professional conduct, whether on duty or off duty," a proposition for which plaintiff cites to the "U.S. Secret Service Fiscal Year 2015 Report to Congress." No. 24-cv-03278, ECF No. 45-1 ¶ 24 n.2; No. 24-cv-03280, ECF No. 45-1 ¶ 24 n.2.[5] Similarly, plaintiff seeks to add the allegation that "all private security officers in California are expected to observe and report any violation of law. In fact, a failure to report the commission of a crime to the appropriate channels can become a crime in itself." No. 24-cv-03278, ECF No. 45-1 ¶ 30; No. 24-cv-03280, ECF No. 45-1 ¶ 30. For this allegation, plaintiff cites to the California Penal Code Sections 31-32. Id. Plaintiff also adds citations to the USSS Offense Code provisions relating to "Unprofessional Conduct," "Misuse of Position," and "Failure to Report Criminal Activity or Improper Intervention." No. 24-cv-03278, ECF No. 45-1 ¶ 28; No. 24-cv-03280, ECF No. 45-1 ¶ 28.

The citations for these proposed allegations demonstrate that the average reader of the allegedly defamatory publications, here the Daily Mail and the New York Post, would not have any knowledge of the 2015 Secret Service Report to Congress, the California Penal Code, or the USSS Offense Code that plaintiff relies on to convert the non-defamatory statements into defamatory ones. Stated

[5] See U.S. Secret Service Fiscal Year 2015 Report to Congress: Professionalism Within the Workforce (July 17, 2015), available online at https://www.dhs.gov/sites/default/files/publications/United%20States%20Secret%20Service%20%28USSS%29%20-%20Professionalism%20within%20the%20Workforce.pdf.

differently, plaintiff endeavors to substitute for the understanding of the "average reader" a select cohort who see the statements through a specific partisan lens. Under established law, that is insufficient to state a claim for defamation under a per se or per quod theory. Accordingly, plaintiff's request to amend can be denied for the separate reason of futility. Sacerdote v. New York Univ., 9 F.4th 95, 115 (2d Cir. 2021) ("[D]enial of leave to amend has long been held proper . . . upon a showing of . . . futility.") (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, plaintiff's motions are denied. The Clerk of Court is respectfully directed to terminate the pending motions. No. 24-cv-03278, ECF No. 43; No. 24-cv-03280, ECF No. 43.

Dated: September 10, 2026
New York, New York

Naomi Reice Buchwald

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE